## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

TINA ROGERS,

        Plaintiff,

vs.                                   CASE NO.  3:10-cv-352-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____

## <u>ORDER AND OPINION</u>

This case is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying Plaintiff's claims for disability insurance benefits ("DIB").  42 U.S.C. § 405(g). Plaintiff filed a legal memorandum in opposition to the Commissioner's decision (Doc. #18; "P's Brief").  Defendant filed a memorandum in support of the decision to deny disability benefits (Doc. #21; "D's Brief").  Both parties consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated September 30, 2010 (Doc. #16).  The Commissioner has filed the transcript of the underlying administrative proceedings and the record evidence (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.  Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed, and determined oral

1

argument would not benefit the undersigned in making his determinations.

Accordingly, the instant matter has been decided on the written record. For the reasons set out herein, **the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings**.

## I.   Procedural History

On June 13, 2008, Plaintiff protectively filed an application for DIB alleging her disability began June 15, 2007 (Tr. 10).  Her claim was denied initially on September 3, 2008 (Tr. 10, 89-91) and upon her request for reconsideration (Tr. 10, 84).  On March 3, 2009, Plaintiff filed a request for a hearing by an ALJ (Tr. 10, 96-97).  A hearing was held November 17, 2009, at which Plaintiff was represented by attorney L. Jack Gibney (Tr. 10, 31).  On December 5, 2009, the ALJ found Plaintiff not disabled (Tr. 7-19) and the Commissioner issued his Notice of Decision - Unfavorable (Tr. 7-9).  On December 28, 2009, Plaintiff filed a request for review of the ALJ's decision (Tr. 4-6).  On March 11, 2010, the Appeals Council denied review (Tr. 1-3).  Plaintiff's current counsel of record L. Jack Gibney, Esquire, filed the instant action in federal court on April 19, 2010, requesting that this Court reverse and set aside the decision of the Commissioner, or remand for a *de novo* hearing (Doc. #1).

## II.   Background Facts

### A. Basis of Claimed Disability

Plaintiff claims to be disabled since June 15, 2007, as a result of rheumatoid arthritis, fibromyalgia, and depression (Tr. 157).

## B. Summary of Evidence Before the ALJ

Plaintiff was born October 17, 1966 (Tr. 82), and was forty-three years old at the time of the hearing (Tr. 31). She has a high school education (Tr. 36), some broadcasting school education (Tr. 37), and past relevant work as a food and beverage controller, an assistant manager of Quiznos, prep cook at TGI Fridays, draw bridge tender or operator, and Jacksonville Transit Authority driver responsible for picking up and dropping off Medicaid patients (Tr. 46, 148-9, 158, 397-446, 457, 463-76, 508-65). Plaintiff's medical history was discussed in the ALJ's decision and will be summarized herein.

### I. Medical Evidence

Between January 9, 2006, and August 7, 2006, Plaintiff visited Dr. Oza, of the Arthritis & Osteoporosis Treatment Center, where Dr. Oza diagnosed Plaintiff with arthritis and treated Plaintiff for such via prescription drugs (Tr. 314-322).

Plaintiff's treating physician of record is Dr. Melia Evans, M.D. (Tr. 44-5, 386-446).[1] Fleming Island Family Medicine records reveal an initial consult date of September 25, 2006 (Tr. 444-46). Between September 25, 2006, and June 9, 2008, Dr. Evans evaluated Plaintiff on several occasions (Tr. 386-446, 485-565). The Fleming Island medical records for Plaintiff have both a subjective and objective component to the evaluation. *Id.*

On September 25, 2006, Plaintiff complained of back pain, arthritis (joint stiffness), depression associated with stress and anxiety due to her living situation, pollen-induced

---

[1]This Court shall construe all references by the ALJ to "Mella Evans," or Plaintiff's reference to "Amelia", as an inattentive typographical error made in the record and decision of the ALJ, and Plaintiff's Memorandum in Support of Complaint; Fleming Island Family Medicine supplied documentation by and from Dr. Evans confirming her identity as "Melia", and only the ALJ incorrectly references the doctor as "Mella" (*See* TR 7-19, 386-446, 485-565, 620-25).

allergic rhinitis, and gastroesophageal reflux disease (GERD) (Tr. 444). Dr. Evans' objective evaluation revealed Plaintiff to be moderately obese, having a supple neck with full range of motion, a normal gait, and suffering from rheumatoid arthritis (Tr. 444-46). Dr. Evans noted, "The pattern of joint symptomatology has been stable and nonprogressive" (Tr. 444). Dr. Evans also noted Plaintiff's occupation, at the time of the visit, to have been a van driver responsible for picking up Medicaid patients and driving them to medical appointments. *Id.* During the subjective evaluation, Dr. Evans noted that Plaintiff admitted to a history of alcohol abuse, and current consumption of approximately two ounces of alcohol three-to-four times per week (Tr. 445). Dr. Evans noted "none" under the category of "Substance Abuse History." *Id.*

On January 23, 2007, Plaintiff visited Dr. Evans and complained of acute sinusitis (Tr. 441). Dr. Evans' objective evaluation revealed Plaintiff to be moderately obese, having a supple neck with full range of motion, a normal gait, and assessed to have acute sinusitis and bronchitis (Tr. 441-43). On January 31, 2007, Plaintiff visited Dr. Evans and complained of left ear pain, with associated symptoms of coughing, external ear swelling, and fever (Tr. 438). Dr. Evans' objective evaluation revealed Plaintiff to be moderately obese, having a supple neck with full range of motion, a normal gait, and positive for arthralgias, back pain, joint stiffness, limb pain and myalgias (Tr. 438-40).

On May 14, 2007, Plaintiff saw Dr. Evans for a follow-up visit (Tr. 435). Plaintiff complained of back pain, arthritis (joint stiffness), depression associated with stress and anxiety due to her living situation, pollen-induced allergic rhinitis, and gastroesophageal reflux disease. *Id.* Dr. Evans' objective evaluation revealed Plaintiff to have been moderately obese, having a supple neck with full range of motion, a normal gait, and

4

suffering from rheumatoid arthritis (Tr. 435-37).   On June 11, 2007, Plaintiff visited Dr. Evans for a routine medical physical examination (Tr. 432).  Dr. Evans' evaluation revealed Plaintiff was positive for recurrent back pain and joint stiffness.  *Id.*

On June 15, 2007, Plaintiff visited Dr. Evans complaining of low back pain (Tr. 430). Dr. Evans' records reveal Plaintiff's occupation, at the time of the visit, to have been a van driver responsible for picking up Medicaid patients and driving them to medical appointments.  *Id.*  Dr. Evans stated it was her opinion that Plaintiff needed to change her employment so that Plaintiff would not be sitting for long periods in a van; Dr. Evans' notes state that Plaintiff needed a desk job as her work was exacerbating her pain (TR  430-31). Plaintiff reported her pain at a level ten (Tr. 430).  Dr. Evans' record indicated Plaintiff: was positive for joint stiffness; did not have full range of motion; suffered from degraded muscular strength; and Plaintiff had no indications of acute injury (Tr. 431).

On July 27, 2007, Plaintiff presented with rheumatoid arthritis on a follow up visit (Tr. 426).  Plaintiff complained of back pain, arthritis (joint stiffness), and depression associated with stress and anxiety due to her living situation (Tr. 426).   Dr. Evans' evaluation determined that Plaintiff was moderately obese, had a normal gait, neck was supple with full range of motion, suffered from arthritis, hypertension, and depression (Tr. 427-29).  Dr. Evans noted, "The pattern of joint symptomatology has been episodic flare-ups with symptom-free periods in between. Primary joints affected include the lumbar spine." (Tr. 426).

On several occasions, Plaintiff visited Dr. Evans, for a variety of complaints, and Dr. Evans' medical records reflect, substantively, the same diagnosis and evaluation.   On September 25, 2007, Plaintiff visited Dr. Evans due to upper back, neck, and shoulder pain

(Tr. 423); on October 12, 2007, Plaintiff visited Dr. Evans in order to discuss Plaintiff's medication (Tr. 420); and on November 16, 2007, Plaintiff visited Dr. Evans with a chief complaint of pain in both shoulders and her wrist (Tr. 417).   On all three occasions, Dr. Evans' medical records reflect similar diagnoses and evaluations:  Plaintiff was moderately obese, had a normal gait, suffered from tenderness in the upper back and across the shoulders, neck was supple with full range of motion, and had rheumatoid arthritis (Tr. 416, 418, 421).   Dr. Evans described Plaintiff's pattern of joint symptomatology as "episodic flare-ups with symptom-free periods in between.  Primary joints affected include the lumbar spine." (Tr. 420, 423).   During the November 16, 2007 visit, Dr. Evans determined that breast reduction surgery was needed to relieve Plaintiff's back pain (Tr. 419).   Dr. Christopher Vashi, M.D., evaluated Plaintiff to determine if a breast reduction could be an alternative means of back and neck pain relief to Plaintiff (Tr. 362-66).   Dr. Vashi determined that a breast reduction was appropriate (Tr. 364-66, 330).   Plaintiff then followed up with Dr. Evans for her arthritis several times throughout the early part of 2008 (Tr. 408-417).

On May 14, 2008, Plaintiff was seen by Audrey Sanford, P.A., for a check up on Plaintiff's arthritis (Tr. 404).  Plaintiff rated her pain as 8/10.  *Id.*  Sanford evaluated Plaintiff and determined that Plaintiff's neck had decreased range of motion, her gait was normal, and Plaintiff had tenderness "in the trigger point in PSM on Rt., at level of T2-T3, approx." (Tr. 406).  Plaintiff was given trigger point injections for her pain, and reported immediate pain relief upon receipt of the injections.  *Id.*

Plaintiff visited Fleming Island Family Medicine for severe back pain, and was seen by Dr. Ray Lebeda on June 12, 2008 and June 18, 2008 (Tr. 516, 401).   Plaintiff

complained of joint stiffness, constant acute lower back pain, to which Dr. Lebeda notes there was no prior history of back pain. *Id.* Dr. Lebeda's evaluation revealed that Plaintiff's neck had decreased range of motion, her gait was normal, range of motion consisted of pain with back lateral flexion and tenderness noted along the right sacroiliac ("SI") joint (Tr. 518, 403).  Dr. Lebeda reported that Plaintiff's arthritis was stable (Tr. 519, 403).

On September 24, 2008, Plaintiff visited Fleming Island Family Medicine and was seen by Dr. Evans for a follow-up visit (Tr. 508).  Dr. Evans' evaluation revealed that Plaintiff's neck had a decreased range of motion, her gait was normal, and her range of motion consisted of pain with back lateral flexion and tenderness noted along the right sacroiliac joint (Tr. 510).

On April 14, 2009 Dr. Evans completed her Residual Functional Capacity assessment (Tr. 620).  Dr. Evans stated that Plaintiff was restricted by her impairment in the following ways: Plaintiff was frequently affected by her impairment when lifting up to twenty pounds, and continuously affected by her impairment when lifting between twenty-one and fifty pounds; Plaintiff was frequently affected by her impairment when carrying up to twenty pounds, and continuously affected by her impairment when carrying between twenty-one and fifty pounds; Plaintiff was limited to one hour of sitting, one hour of standing, and two hours of walking in an eight hour workday; Plaintiff's impairment occasionally affected simple grasping and fine manipulation of both hands; and Plaintiff could occasionally climb, balance, stoop, crouch, kneel, or crawl (Tr. 620-625).  Dr. Evans described Plaintiff's lumbar pain as chronic, but Plaintiff's hand, arm, shoulder, and neck pain were frequent (Tr. 624).

Dr. Evans referred Plaintiff to Riverside Spine where Dr. Kornick evaluated and subsequently treated Plaintiff for pain management, using trigger point injections on several occasions in 2008 (Tr. 450-454, 576-87).   On June 26, 2008, Plaintiff reported to Dr. Kornick that she suffered "continuous deep pain located in the lower back that radiates into the right lower extremity at times" (Tr. 451).   Plaintiff reported the pain is increased with prolonged sitting or standing and is decreased with resting or changing positions.   *Id.* Plaintiff rated her pain as 7/10 at rest, 8/10 with activity, 5/10 at its best, and 10/10 at its worst.   *Id.*   On October 28, 2008, Dr. Kornick's evaluation and MRI of the lumbar spine revealed: posterior annular fissure at L3-L4 and L4-L5; right foraminal disc protrusion at L3-L4, producing mild to moderate right neural foraminal narrowing; disc bulge at L4-L5 indenting the thecal sac producing bilateral neuro formainal narrowing, and no lumbar spinal stenosis reported at L5-S1 (Tr. 570).   Furthermore, Dr. Kornick's evaluation and MRI of the cervical spine showed: hemangioma of the C3 vertebral body; multi level mild disc desiccation; bilateral uncinate arthrosis at C3-C4 producing moderate bilateral neuro foraminal narrowing; and no cervical spinal stenosis.   *Id.*   Dr. Kornick determined that Plaintiff "has a legitimate painful medical condition that requires treatment with pain medication," and that Dr. Kornick instructed Plaintiff "not to drive, operate heavy machinery, or perform any other activity that could put her or others at risk" (Tr. 571).

Dr. Jeffrey Caudill , M.D., also evaluated and treated Plaintiff during the period of January 15, 2009, and April 6, 2009, where Dr. Caudill administered spinal injections in order to alleviate neck and back pain (Tr. 611-18, 827-41).   Dr. Caudill's examinations revealed Plaintiff had limited extension and rotation in her neck; 5/5 motor strength throughout; lumbar paraspinal tenderness in her back; tenderness to palpation over the

sacroiliac joints bilaterally; and significant muscle spasms of the lumbar paraspinous muscles (Tr. 612, 613, 618, 829, 833).

Plaintiff underwent surgery for colon cancer in May of 2009 (Tr. 765-81). The ALJ did not find that the colon cancer or ancillary treatments to be relevant to Plaintiff's claim for disability, nor does Plaintiff contend otherwise. Therefore, a review of the relevant record relating to the cancer is unnecessary.

### ii. Plaintiff's Testimony

Plaintiff reported that she was unable to work due to severe pain caused by rheumatoid arthritis, fibromyalgia, and depression (Tr. 157). Plaintiff also reported that she cooks two to three times per week, does light household chores including laundry, makes quick trips to the grocery store approximately twice a week, drives short distances, does some small gardening tasks, takes care of her personal needs, maintains her finances, socializes with friends through visits and telephone conversations, plays cards, reads, and swims (Tr. 15, 40-41, 51-55, 153-54, 185, 190-92, 219, 460).

Plaintiff admits to driving for extended periods of time; Plaintiff's drive to the ALJ hearing took approximately one hour forty-five minutes (Tr. 41). Plaintiff admits to smoking one pack of cigarettes a day, and consuming alcohol approximately twice a week (Tr. 44). Additionally, Plaintiff denies having used illegal drugs for many years, but admits to usage when she was younger. *Id.* Plaintiff stated that she worked with her fibromyalgia for over ten years (Tr. 46). Plaintiff states that Dr. Evans instructed her to stop working (Tr. 46-7).[2] Plaintiff testified to receiving unemployment benefits for over a year, and presumably for

---

[2]Dr. Melia Evans' notes state that Plaintiff "needs a desk job at this point," and that Plaintiff "needs to change positions at her job. She drives 13 hours a day which we cut down to 10 hours per day with no improvement in symptoms" (Tr. 430-31).

the maximum allowable time, including extensions, whereby she verified that she was at all times ready, willing, and able to work (Tr. 48-9).  Plaintiff also testified that despite her affirmation on the government form that she was ready, willing, and able to work, she was not, in fact, able to work because of her disability (Tr. 12, 47-9).

Plaintiff stated that her husband drives to and from the store and for various errands, mostly because she is physically unable to get around (Tr. 43-4).  Plaintiff stated that her husband did not "really go anywhere . . . [because he is] mentally disabled, . . ., schizophrenic, and bipolar" (Tr. 55-6).

### C. Summary of the ALJ's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since her claimed disability onset date (Tr. 12).  The ALJ found that Plaintiff had the following impairments that were "severe" pursuant to 20 C.F.R. § 404.1520(c): rheumatoid arthritis, spinal disorders, and herniated nucleolus pulpous at L3-L4, L4-L5 with mild stenosis.  *Id.*  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (Tr. 14).  The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform sedentary work as it is defined in the regulations, except Plaintiff required a sit/stand option that would allow her to stand for five minutes for every sixty minutes of sitting.  *Id.*  The ALJ also found that Plaintiff could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  *Id.*  Further, Plaintiff could occasionally perform fine and gross manipulation with both of her hands.  *Id.*  With this RFC, the ALJ found that Plaintiff was unable to perform any of her past relevant work (Tr. 17).  However, based on

testimony from a Vocational Expert (VE), the ALJ determined there were a substantial number of jobs in the national economy that Plaintiff could perform (Tr. 18-19).  The ALJ found that, based upon the ALJ's RFC, Plaintiff could perform the following jobs: (1) surveillance system monitor, DOT 379.367-010; (2) information clerk, DOT 237.367-022,[3] and (3) telephone solicitor, DOT 299.357-014 (Tr. 18).   Therefore, the ALJ found that Plaintiff was not under a disability since June 15, 2007, the alleged onset date (Tr. 19).

### III.  Standard of Review

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's

---

[3]The ALJ's decision list the position of information clerk to have a DOT reference number of 237.367-032. The DOT manual does not have a listing for DOT reference number of 237.367-032, but the position of information clerk has a DOT reference number of 237.367-022.  The Court assigns this as a scrivener's error.

decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, a plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations.  20 C.F.R. § 404.704.

I

## IV.  Analysis

Plaintiff argues two issues on appeal.   Plaintiff asserts: (1) the ALJ improperly considered the opinions of Plaintiff's medical providers, including Plaintiff's treating physician, Dr. Melia Evans; and (2) the VE erred when the VE provided a job which required frequent fine and gross manipulation when the ALJ inquired about jobs where only occasional fine and gross manipulation were required (P's Brief p.10).

### i. Proper Weight to Treating Physician

The Regulations provide that, generally, more weight should be given to the opinion of a source who has examined a claimant than to the opinion of a non-examining source. 20 C.F.R. § 404.1527(d).  The Regulations further instruct ALJs with respect to properly weighing the medical opinions of treating physicians.  The Regulations provide, in pertinent part, as follows:

> Generally, we give more weight to opinions from [a plaintiff's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s)," a treating physician's medical opinion is due to be afforded great weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  *Id.*  Important to the determination of

13

whether there is a "detailed, longitudinal picture" of a claimant's impairments is the length of the treatment relationship,[4] the frequency of examination, the knowledge of the treating source as shown by the nature and extent of the treatment relationship, the evidence and explanation presented by the treating source to support his or her opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician.  20 C.F.R. § 404.1527(d)(2)–(5).

In addition, it is well established in the Eleventh Circuit that, generally, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is "good cause" to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).  The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is: (1) not bolstered by the evidence; (2) contrary to the evidence; or (3) inconsistent with the treating physician's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  *Lewis*, 125 F.3d at 1440.  "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court cannot "disturb the ALJ's refusal to give the opinion controlling weight."  *Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x. 741, 743 (11th Cir. 2008)

---

[4] Generally, the longer a treating source has treated a claimant and the more times a claimant has been seen by a treating source, the more weight that should be given to that source's medical opinion.  20 C.F.R. § 404.1527(d)(2)(I).

# I

(citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).[5]

Plaintiff first argues the ALJ applied improper weight to the opinion of the Plaintiff's treating physician, Dr. Evans, in determining Plaintiff's RFC.  The undersigned agrees with Plaintiff and finds the ALJ erred in assigning no weight to the treating physician's opinion.

In the instant case, the ALJ assigned "no weight to the opinion of Dr. Evans, to the extent that it is inconsistent with the residual functional capacity delineated [above] because it is inconsistent with the record, her own treatment records and the medical and other evidence of record" (Tr. 17).  The ALJ only considered Dr. Evans' opinions to the extent that the:

> internally inconsistent opinion . . .is not inconsistent with the residual functional capacity [of Dr. Knox] . . . because the sitting, standing, and walking, and missed workdays limitations are not consistent with the medical and other evidence of record and appear to be based upon the subjective reports of the claimant and are not consistent with her treatment records.

(Tr. 16-17).  In support of his determination, the ALJ noted examinations revealed a normal gait and range of spinal motion; Plaintiff's arthritis was noted as stable in 2008, although Plaintiff still complained of chronic pain; and Dr. Evans determined Plaintiff could lift and carry up to fifty pounds for eight hours a day.  *Id*.

The Court's independent review of the record as a whole, as required under *Bloodsworth v. Heckler*, 703 F.2d at 1239, reveals the ALJ has misquoted or misconstrued the record on numerous points.  Specifically, the ALJ misstates the record when articulating

---

[5] Unpublished opinions may be cited throughout this order as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

his reasons for giving Dr. Evans' opinion no weight.  Therefore, the Court finds the ALJ has failed to establish the requisite good cause to discount her opinion.  *See Lampp v. Astrue*, 2008 WL 906641 at *3 (M.D. Fla. Mar. 31, 2008) (remand appropriate where ALJ misquotes the record); *Goulet v. Astrue*, 2008 WL 681049 at *3 (M.D. Fla. Mar. 7, 2008) (same).

The ALJ found Dr. Evans' opinion to be inconsistent with her medical records because, "[e]xaminations reveal a normal gait and range of spinal motion, even during periods of exacerbation."  While Dr. Evans and Dr. Lebeda's examinations of Plaintiff consistently revealed normal gait, such examinations did not reveal normal range of spinal motion, as the ALJ contends.  Rather, the relevant reports read, "MUSULOSKELETAL: digits/nails: no clubbing, cyanosis, or evidence of ischemia or infection; normal gait**;** range of motion**: pain with back** lateral flexion; Crepitus, Tenderness, Effusion: tenderness noted in the **Along the right Left SI joint**." (Tr. 399, 403, 510, 518) (emphasis in original).  It is clear from the use of the semi-colon that the word "normal" only describes Plaintiff's gait and not her range of motion, where instead "pain with back lateral flexion" was found. Thus, Plaintiff did not experience normal range of spinal motion, even during periods of exacerbation, as the ALJ contends.  Further, it is unclear from the ALJ's decision how a finding of a "normal gait" necessarily contradicts Dr. Evan's opinion that Plaintiff's rheumatoid arthritis placed serious limitations on her residual functional capacity.  Chapter 20 Code of Federal Regulations, Section 404.1520(3), provides that the Social Security Administration ("SSA"), "will consider **all** evidence in your [the claimant's] case record when we [the SSA] make a determination or decision whether you are disabled" *(emphasis added)*.  Consequently, an ALJ cannot pick and choose from the evidence in order to

16

support his or her conclusions.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir.

2004) ("[t]he ALJ is not entitled to pick and choose from a medical opinion, using only those

parts that are favorable to a finding of nondisability").   In addition, the Ninth Circuit has

found remand warranted where the ALJ's "paraphrasing of record material is not entirely

accurate regarding the content or tone of the record."  *Reddick v. Chater*, 157 F.3d 715,

723 (9th Cir. 1998).

     The ALJ also misstated the record regarding Plaintiff's ability to lift and carry up to

fifty pounds for eight hours a day.  It appears the ALJ misread or misunderstood Dr. Evans'

Physical RFC Assessment.  In his decision, the ALJ incorrectly stated twice that Dr. Evans

"opined on April 14, 2009, that the claimant could lift and carry 21 to fifty pounds

continuously and up to twenty pounds frequently during an eight hour workday" (Tr. 16, 17).

After review of Dr. Evans' RFC on April 14, 2009, the record clearly reflects that Dr. Evans

determined that Plaintiff's impairment **frequently affected her ability** to lift and carry up

to twenty pounds, and that Plaintiff's impairment **continuously affected her ability** to lift

and carry twenty-one pounds or more (Tr. 622).<sup>6</sup>  Dr. Evans did not determine that Plaintiff

could continuously lift and carry up to fifty pounds in a workday.  Rather, she determined

that Plaintiff's ability to lift and carry up to fifty pounds was continuously affected by her

impairment.  Thus, Dr. Evans in fact reached the opposite conclusion than that reflected

by the ALJ in his decision.  This is concerning, because such a misreading of the RFC

assessment questionnaire may have impacted the ALJ's overall determination of Plaintiff's

---

<sup>6</sup>The question posed on the questionnaire reads: "Are Lifting and/or Carrying affected by the Impairment?" (Tr. 622).  The evaluator can select a "yes" or "no" option, followed by three weight ranges to be evaluated if so affected: "up to 10lbs."; "11 to 20 lbs."; and "21 to 50 lbs." (Tr. 622).  For each weight group, the evaluator can check: (1) never; (2) Occasionally; (3) Frequently; or (4) Continuously (Tr. 622).

RFC, in addition to impacting the ALJ's decision to discount Dr. Evans' opinion.

In assigning Dr. Evans' opinion no weight, the ALJ also stated Plaintiff's rheumatoid arthritis "was noted to be stable in 2008 although she did continue to report chronic pain" and implies such a finding is inconsistent with Dr. Evans' opinion. The ALJ appears to be referring to Dr. Lebeda's June 12, 2008 report where he noted Plaintiff's rheumatoid arthritis was stable (Tr. 519). However, Dr. Lebeda also described Plaintiff's pattern of joint symptomatology as "episodic flare-ups with symptom-free periods in between. Primary joints affected include the lumbar spine" (Tr. 518). Dr. Lebeda and Dr. Evans both described Plaintiff's condition in this way throughout 2007 and 2008 (Tr. 408, 414, 420, 423, 426, 508, 516). Further, Stedman's Medical Dictionary defines "stable" as "steady; not varying; resistant to change." *Stedman's Medical Dictionary* (Williams & Wilkins 25th Ed. 1990). Plaintiff consistently complained of chronic joint pain and examinations by various doctors, including Dr. Evans, routinely found limited range of motion, joint tenderness, and muscle spasms (Tr. 403, 406, 451, 510, 518, 612, 613, 618, 829, 833). Thus, an opinion from another doctor that Plaintiff's arthritis was "stable," i.e. not worsening, does not provide a basis for rejecting Dr. Evans' opinion as inconsistent with her own medical records.

The ALJ also implies that Dr. Evans' records are inconsistent with the record as a whole because Dr. Evans' reports note, in contrast to Plaintiff's testimony, that Plaintiff drinks doubles of alcohol three to four times per week and has an occupation as a van driver picking up and dropping off Medicaid patients (Tr. 17). Review of the record finds

that Plaintiff at times recited differing amounts of alcohol consumption.[7]  However, such differences were minor and the Court considers them de minimis.  Furthermore, other than to undermine Plaintiff's own credibility, the Court is unsure how Plaintiff's differing reports of alcohol consumption either undermines Dr. Evans' opinion that Plaintiff's arthritis impacted her ability to work or shows that Dr. Evans' opinion is inconsistent with the objective findings in her medical reports related to Plaintiff's arthritis.

Substantial weight must be given to the opinion of a treating physician unless there is good cause to do otherwise, such as where the treating physician's opinion is inconsistent with her own medical records or is contrary to the evidence.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  Where the ALJ has decided to give less weight to the opinion of a treating physician, he must "clearly articulate the reasons" and the "failure to do so is reversible error."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  This Court finds the ALJ has failed to clearly articulate reasons as to why good cause exists to give Dr. Evans' opinion no weight.  Accordingly, the ALJ's decision is not supported by substantial evidence.

### ii. Hypothetical Posed to the Vocational Expert

It is well established in the Eleventh Circuit that when a vocational expert (VE) is utilized at the fifth step in the sequential evaluation process, the hypothetical questions posed must include all severe impairments of the particular claimant/plaintiff.  *Pendley v.*

---

[7] Plaintiff consistently relayed to her doctors at Fleming Island Family Medicine that she consumed approximately two ounces of alcohol three-to-four times per week (Tr. 386-446); Plaintiff relayed to Dr. Kornick that she consumed alcohol approximately twice a week, but in the amount of up to five drinks each time (Tr. 452); Plaintiff conveyed an approximate consumption rate of ten alcoholic beverages per week to Dr. Henderson (Tr. 265); and Plaintiff testified to the ALJ that she drank approximately twice a week (Tr. 44).

*Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985).

After a claimant has proven that she can no longer perform her previous employment, step five of the disability analysis requires the Commissioner to determine whether there is other work available in the national economy that the claimant is able to perform, based on the claimant's RFC, age, education, and past work experience. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); 20 C.F.R. §416.920(f).   If the Commissioner determines that other work exists in significant numbers in the national economy that the claimant can perform, given the aforementioned considerations, then the claimant is not disabled.  20 C.F.R. § 404.1512(g), § 404.1560(c), §416.920(f).

Plaintiff's argument on this issue centers specifically on whether the vocational expert failed to properly consider the ALJ's question limiting the job options to "occasional fine and gross manipulation" (P's Brief at 10-11).  Plaintiff contends that "occasionally" being able to perform a task precludes the Plaintiff from being able to "frequently" perform the same task.  *Id.*  Specifically, the ALJ found that Plaintiff could perform the duties of a telephone solicitor, DOT 299.357-014 (Tr. 18).  According to the Dictionary of Occupational Titles, Telephone Solicitor requires frequent fine and gross manipulation.  The Court finds Plaintiff's argument to be valid, and the ALJ incorrectly determined that this position was within the Plaintiff's ability to perform.  However, it is harmless error by the ALJ because the VE testified that there were two other occupations which did not require frequent fine and gross manipulation, totaling 12,000 jobs in Florida, and 190,000 jobs nationally.  *Id. See Compton v. Astrue*, CIV. A. 08-0624-M, 2009 WL 1555416 (S.D. Ala. June 3, 2009) (harmless error occurred when the VE and ALJ determined that some of the jobs presented by the VE did not meet the functional limitations of the plaintiff because other jobs, of

record, were available to the plaintiff); *Floyd v. Astrue*, No. 1:09CV1062-WC, 2010 WL 4386520 (M.D. Ala. Oct. 29, 2010) (same).

## V.  Conclusion

For the foregoing reasons, the undersigned finds the decision of the Commissioner is neither supported by substantial evidence, nor decided according to proper legal standards.  The decision of the Commissioner is hereby **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g).   The case is **REMANDED** for additional proceedings consistent with this Order and Opinion.

On remand, the Commissioner should hold other proceedings as he deems necessary, but in any event should re-evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law, re-weigh the opinion evidence, and give the appropriate weight to the opinion of Plaintiff's treating physician, Dr. Evans.

Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits.  Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act.  *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.  The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) **must be filed within thirty (30) days** of the Commissioner's final decision to award benefits.  *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n.2 (11th Cir. 2006) (recognizing under Fed. R. Civ. P.

54(d)(2)(B) the district court may enlarge the time for any attorney to petition for fees and suggesting time be stated in the judgment); *compare with* Fed. R. Civ. P. 54(d)(2)(B) and M.D. Fla. Loc. R. 4.18(a) (both requiring that unless a statute **or court order** provides otherwise, any motion for attorney fees must be filed no later than fourteen (14) days after entry of judgment) (emphasis added).

This Order does not, however, extend the time limits for filing a motion for attorney fees under the Equal Access to Justice Act.

**DONE AND ENTERED** at Jacksonville, Florida this 16th day of September, 2011.

Copies to:
All Counsel of Record
*Pro Se* Parties, if any

**THOMAS E. MORRIS**
United States Magistrate Judge